Dear Mr. Teague:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. You have asked for an opinion concerning whether the Office of Group Benefits (OGB) may provide an "amnesty" opportunity in connection with its ongoing dependent verification project, in light of Article VII, Sections 14(A) and 15, of the Louisiana Constitution of 1974.
You indicated the following to us:
 OGB's rules clearly define those persons who are eligible to be covered as dependents of employees and retirees. Documentation has long been required in matters such as adoption, custody, guardianship, and student status. However, documentation such as marriage licenses for spouses or birth certificates for children has not been required. The Office of Legislative Auditor recently noted this discrepancy and urged OGB to take timely corrective action.
 OGB is now engaged in a process to obtain appropriate documentation for all of the dependents enrolled for coverage in OGB sponsored health plans. This is to be done in phases, and OGB will terminate the coverage of all dependents for whom required documentation has not been submitted, effective January 1, 2009.
 Dependent verification processes conducted by other organizations have included an aspect of "amnesty" in the initial phase of requiring documentation for dependents. Employees and retirees *Page 2 
are afforded an opportunity to voluntarily disenroll ineligible dependents during the amnesty period, in exchange for which the employer agrees to take no action to recover premiums contributions and/or benefits paid. OGB has proposed such amnesty for those individuals who disenroll ineligible dependents during April 2008, effective May 1, 2008.
Article VII, Section 14 of the Louisiana Constitution of 1974 prohibits the state or any of its political subdivisions from loaning, pledging, or donating funds, property or things of value to or for any person, association, or corporation. In 2006, the Louisiana Supreme Court announced a new standard for determining whether Art. VII, Sec. 14 is violated. In Board of Directors of the Industrial Development Board ofthe City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case), the Court stated that "[Art VII] § 14(A) is violated when public funds or property are gratuitously alienated." Thus, if the amnesty opportunity amounted to a gratuitous alienation of property or a thing of value, it would be an unconstitutional donation pursuant to Art. VII, Sec. 14.
In Atty. Gen. Op. No. 07-0134, we stated that in order for an expenditure or transfer of public funds or property to comply with Art. VII, Sec. 14(A) under Cabela's, the public entity must show:
 1. A public purpose for the expenditure or transfer;
 2. That the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and
 3. Evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
We believe a similar analysis applies where there is a remission of debt.
Here, the properties or things of value in question that OGB alienated were the potential claims that it had with regard to premium contributions and claim payments made on behalf of ineligible dependents. La. Civ. Code Article 2298 provides, in part, as follows:
 A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . .
 The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less. *Page 3 
 The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
Additionally, La. Civ. Code Article 2299 provides as follows:
 A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.
Also relevant is La. Civ. Code Article 2300, which provides:
 A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist.
Thus, under Louisiana law, OGB has a right to recover payments it makes on behalf of employees' and retirees' ineligible dependents from the employee or retiree, the insured, or the service provider. Also, OGB or the employer has a right to recover the portion of premium contributions paid by the employer with respect to those ineligible dependents. Additionally, under La.R.S. 42:807, "any person convicted of fraudulently obtaining funds from the Office of Group Benefits, including but not limited to any person who has been convicted under R.S. 14:26, R.S. 14:27, R.S. 14:67, or R.S. 14:133, shall immediately lose eligibility for coverage under both the life insurance plan and the health and accident insurance plan of the Office of Group Benefits."
Under the amnesty opportunity referenced in your request, if an employee or retiree came forward by April 30, 2008 and disenrolled his ineligible dependent(s), OGB would not pursue collection from that member, ineligible insured, or the provider(s) of services rendered to the ineligible dependent. This appears to be a remission of debt under Louisiana law.
La. Civ. Code Art. 1888 provides that:
 A remission of debt by an obligee extinguishes the obligation. That remission may be express or tacit.
In his treatise on obligations, Professor Saul Litvinoff explains that "a remission of debt is the voluntary abandonment or renunciation of his right by the creditor in favor of his debtor." 5 La. Civ. L. Treatise, Law Of Obligations § 18.1 (2d ed.). It is one of the manners in which obligations are extinguished. By voluntary remission, a creditor may discharge his claim against the debtor, in whole or in part. Id. A remission of debt may be subject to a condition and may be *Page 4 
gratuitous or onerous. Id. at §§ 18.2 and 18.6. Professor Litvinoff further explains that:
 In the practice of legal transactions, however, a remission of debt does not always reflect a liberal intent on the part of the creditor. Indeed, he may consent to remit because of some advantage offered him by the debtor. 5 La. Civ. L. Treatise, Law Of Obligations § 18.6 (2d ed.).
The effect of a remission is that it extinguishes the obligation. Depending on the intent of the creditor, the remission may extinguish the whole or only a part of the debt, and it may bring the obligation to an end with finality, that is, in a pure and simple way, or subject to a condition. 5 La. Civ. L. Treatise, Law Of Obligations § 18.9 (2d ed.).
It seems that, through the amnesty opportunity, OGB in effect made an offer of remission subject to the suspensive condition that the employee or retiree disenroll his ineligible dependent(s) by April 30, 2008. For those that did in fact disenroll their ineligible dependents by that deadline, both their and their disenrolled dependent's obligation to reimburse OGB and/or the employer for medical bills and premiums paid on behalf of those dependents were extinguished. Additionally, any obligation of service providers to reimburse OGB for payments received on behalf of ineligible dependents was also extinguished. Finally, OGB would not pursue any criminal charges against the employee or retiree and thus could not affect the employee or retiree's eligibility for benefits.
Applying the jurisprudential standards announced in Cabela's, the public purpose for OGB's offer of amnesty was to remove ineligible dependents and thus obtain the savings associated therewith. OGB weighed the advantages of an amnesty opportunity against the disadvantage of having to discover ineligible dependents on its own and then pursue collection from the employee, retiree, or service provider, and decided that it was in its best interests to establish an amnesty opportunity.
Removing ineligible dependents from OGB's rolls would almost certainly result in a savings to OGB of all future costs that would be associated with that dependent, which would include premium and claim payments. Thus, the amnesty opportunity, taken as a whole, does not appear to be gratuitous under the jurisprudential standards discussed above.
We also believe that OGB had a reasonable expectation of receiving a benefit or value at least equivalent to the amount given up through the amnesty opportunity. While OGB now has a plan to require documentation such as *Page 5 
marriage licenses and birth certificates for all dependents by December 2008, you indicated that there is no cost-efficient manner for OGB to determine whether, for example, an employee or retiree is still in fact legally married to a dependent. Such a determination would involve OGB periodically conducting a search of the records of all of the parishes and counties of the United States. Through the amnesty, OGB may have removed ineligible dependents that would not have otherwise been discovered through the documentation process.[1] Moreover, those ineligible dependents that would have been disenrolled effective January 1, 2009 due to lack of documentation or unauthentic documentation were disenrolled eight months earlier through the amnesty, thus resulting in further savings for OGB.
You also indicated that recently implemented changes by the Governmental Accounting Standards Board require public sector employees to account for the future cost of post employment benefits such as health care on an incurred rather than a paid basis. This compounds the impact of ineligible dependents on the state's bottom line and is another example of the savings resulting from removing ineligible dependents.
Finally, the amnesty opportunity eliminated obligations in both directions, since OGB members gave up their right to reimbursement for premiums paid on behalf of ineligible dependents as a payment of a thing not due under La. Civ. Code 2300. La. Civ. Code 2299. We note that OGB's right to enforce the obligation of a plan member for reimbursement of payments made on behalf of an ineligible dependent is limited to eighteen months from the date of payment unless OGB is able to establish the elements of insurance fraud under La.R.S. 22:1241-1247. On the other hand, the prescriptive period applicable to a member's action for recovery of premiums not due may be subject to the ten-year prescription for personal actions under La. Civ. Code 3499.
In conclusion, it is the opinion of this office that the amnesty opportunity did not result in a donation of state property or a thing of value under Article VII, Section 14 of the Louisiana Constitution of 1974, as interpreted by the courts.
You also asked whether an amnesty opportunity would be in violation of Article VII, Section 15 of the Louisiana Constitution of 1974, which provides the following: *Page 6 
 The legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporation or individual to the state, a parish, or a municipality. However, the legislature, by law, may establish a system under which claims by the state or a political subdivision may be compromised, and may provide for the release of heirs to confiscated property from taxes due thereon at the date of its reversion to them.
La.R.S. 42:801(A) created the OGB "within the office of the governor, division of administration." The powers and duties of the OGB are set out in La.R.S. 42:802. La.R.S. 42:802(A)(1) provides, in part, that:
 The Office of Group Benefits shall have the powers and privileges of a corporation and shall exercise all powers, duties, functions, and responsibilities provided or authorized for it by law.
We interpret the powers and privileges of a corporation to include the right to compromise claims on its behalf. La.R.S. 12:41. We believe that the amnesty opportunity was of the same nature as a compromise, and that, through La.R.S. 42:801(A), the legislature has created a system under which OGB's claims may be compromised.[2] Thus, if the amnesty opportunity was approved by someone with the proper authority to compromise claims for OGB, it would not be in violation of Article VII, Section 15 of the Louisiana Constitution of 1974.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General.
 By: ____________________ BENJAMIN A. HUXEN II Assistant Attorney General
JDC/BAH II:crt
[1] In your letter, you indicate that OGB's Eligibility Department records show that an average of approximately 1,000 dependents are dropped each month due to divorce, attainment of the maximum age for children, change in student status, etc. Significantly, you have also indicated that in April 2008, the number of dropped dependents rose to almost 2,500.
[2] We make no determination of whether the amnesty opportunity met the requirements of La. Civ. Code Art. 3072, which states that "a compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."